## PORTO RICO DRUG CO. v. UNITED STATES.

(Circuit Court of Appeals, First Circuit. November 5, 1926.)

No. 1932.

1. **Customs duties** ⊙⊐134—**Testimony by assistant collector of customs as to inferences grounded on information obtained during investigation held erroneously admitted in prosecution for receiving goods imported without paying duty (Tariff Act 1922, § 593b [Comp. St. § 5841h13]).**

In prosecution under Tariff Act 1922, § 593b (Comp. St. § 5841h13), for receiving goods imported without payment of duties and transporting and selling such goods, admitting testimony of assistant collector of customs relative to his inferences, grounded on his information obtained from others during investigation, *held* erroneous.

2. **Customs duties** ⊙⊐134.

Customs official has no right, in prosecution for receiving, transporting, and selling goods imported without payment of duty, to testify as to result of investigation leading to prosecution.

3. **Criminal law** ⊙⊐656(9).

Comment of court, in prosecution under Tariff Act 1922, § 593b (Comp. St. § 5841h13), that he thought certain evidence was competent because it would be impossible to lawfully import goods, *held* incompetent and prejudicial.

In Error to the District Court of the United States for the District of Porto Rico; Ira K. Wells, Judge.

The Porto Rico Drug Company was convicted for receiving goods imported without payment of customs duties, and for transporting and selling such goods, and it brings error. Reversed, verdict set aside, and case remanded.

Leopoldo Feliu, of San Juan, Porto Rico, for plaintiff in error.

George R. Farnum, Asst. U. S. Atty., of Boston, Mass. (John L. Gay, U. S. Atty., and Jesus A. Gonzalez, Asst. U. S. Atty., both of

San Juan, Porto Rico, on the brief), for the United States.

Before BINGHAM, JOHNSON, and AN-DERSON, Circuit Judges.

ANDERSON, Circuit Judge. This is a prosecution under section 593b of the Tariff Act of September 21, 1922 (42 Stat. 982 [Comp. St. § 5841h13]), which reads:

"If any person fraudulently or knowingly imports or brings into the United States, or assists in so doing, any merchandise, contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law, such merchandise shall be forfeited and the offender shall be fined in any sum not exceeding $5,000 nor less than $50, or be imprisoned for any time not exceeding two years, or both. Whenever, on trial for a violation of this section, the defendant is shown to have or to have had possession of such goods, such possession shall be deemed evidence sufficient to authorize conviction, unless the defendant shall explain the possession to the satisfaction of the jury."

The indictment contains three counts. The first charges that the defendant, a Porto Rican corporation doing business in San Juan, on or before the 15th of February, 1925, willfully, knowingly, unlawfully, clandestinely, and with. criminal intent, received and concealed 146 packages of Coty's face powder, valued at $48.50, knowing the same to have been imported from a country foreign to the United States, without having been examined by a duly authorized official of the United States Treasury, and without payment of the customs duties thereon as required by law.

The second and third counts are for transporting and selling the same goods.

The drug company was found guilty. Motions for a new trial and in arrest of judgment were overruled and the maximum fine of $5,000 was imposed under each count—$15,000 in all.

The case comes here on numerous assignments of error, presented by new counsel, who did not try the case. As it is clear that there was a mistrial, and that the judgment must be reversed, we find it unnecessary to consider most of these assignments.

There was no direct evidence that the goods were smuggled or (if smuggled) of the defendant's scienter. If there was any evidence at all on these vital issues in the case, it was circumstantial or remotely inferential.

The nature and legal aspects of the trial will, for present purposes, be sufficiently indicated by a verbatim extract from the record. [1] The government's first witness was Siegmund, the assistant collector of customs at San Juan, Porto Rico. The record proceeds:

"I have been for 12 years in the customs service, and during all that time I have been in Porto Rico, except for vacations in the States. As an assistant collector of customs for this district I have had occasion to examine into the importation of merchandise, and to determine what is foreign merchandise and what is domestic merchandise; that is, what is imported from the States and what is imported from foreign countries.

"I had occasion to make an inspection of the Porto Rico Drug Company some time in September, 1924. My purpose in going there was that certain complaints had been filed by the trade-mark owners of 'Coty's' powder and perfumes that a considerable quantity of this merchandise was sold in the island illegally. A special investigator came down from the United States in July, 1924, and later on two special agents were sent down, and arrived here, I believe, in August, 1924. In September of that year we went to several drug stores in Porto Rico and found that Coty's face powder, which had not been imported through the customs, and on which we believed duties had not been paid, was being sold.

"Mr. De Jesus: I object to that part of the answer that refers to the result of the investigation. There are other witnesses who will no doubt testify as to that.

"Mr. Gay: Whatever he knows of his personal knowledge.

"The Court: Yes; but he does not know where these people bought this merchandise. Objection sustained, and that part in regard to where they bought the powder will be stricken from the record."

The witness continued testifying as follows:

"A complaint had been made that the trade-mark rights of Coty, Incorporated, of New York, were being violated in Porto Rico by the sale of Coty powder, which had not been purchased from Coty & Co. of New York.

"Mr. De Jesus: I ask that that answer be stricken from the record as immaterial.

"The Court: I think that is preliminary, and is the reason why he made the investigation. Objection overruled.

"Mr. De Jesus: An exception please."

The witness continued testifying as follows:

"It was upon that complaint that I made my investigation. During this investigation, we took several packages of powder found in these drug stores and later I went to New York and visited Coty, Incorporated, with these packages, to ascertain if any packages bearing those marks were sold by them.

"Mr. De Jesus: I object to that, your honor. The best evidence would be the evidence of Coty, Incorporated.

"The Court: I think this is proper. It is a conversation he had with the people who owned the right to sell this powder in Porto Rico.

"Mr. De Jesus: Does not your honor believe that the best evidence here would be the testimony of those people in the States, and not what they said to this witness?

"Mr. Gay: He is a customs official, and he has the right to state what was the result of his investigation.

"The Court: Objection overruled.

"Mr. De Jesus: An exception, please."

The witness continued testifying as follows:

"When I got to New York, I called on Coty & Co. at their manufacturing plant, and inspected the plant and all the processes of manufacture right through to the packing, and during that inspection I did not see a package of Coty's powder bearing the marks of the packages seized by the customs in Porto Rico. The packages packed by Coty, Incorporated, in New York, were so marked 'Packed in U. S. A., by Coty & Co.' The packages seized by us during the investigation are marked 'Made in France.'

"The Coty Company in the United States is owned by the Coty Company in France. Mr. Coty mixes his own perfumes in the United States. He sends his own essences over, and then comes to the United States and dilutes them according to his own recipes. The original manufacturer of this powder is in France, and there is a corporation in the United States which manufactures the same powder with a different mark on it. Coty & Co. in New York hold patent rights for this particular face powder."

From this excerpt it is apparent that at the very outset the court permitted this assistant collector of customs to testify concerning an investigation occasioned by complaints that trade-marks of Coty, Incorporated, of New York were being violated in Porto Rico by the sale Coty's powder which had not been purchased from the New York Coty concern. [2] The court expressly admitted his conversation "with the people who owned the right to sell this powder in Porto Rico." This ruling fell little short of adopting the contention of the United States attorney that the witness "is a customs official and he has the right to state what was the result of his investigation" —obviously entirely unsound and highly prejudicial. At any rate, the witness did, throughout the trial, proceed to state "the result of his investigation," including hearsay, inference, and his opinions on the law.

Later in his examination he was asked, referring to what he found with Coty & Co. in New York:

"Now, in your investigation, Mr. Siegmund, did you find any of those boxes there that are packed in France?"

Objection to this question was overruled, and the witness testified at length to his inferences, grounded on information he obtained (or thought he obtained) from Coty & Co. in New York—that the powder found in the defendant's premises and in various drug stores in Porto Rico had been put up in France; and the court in overruling the defendant's objections stated:

"I believe it is competent, because I believe it would be impossible for any face powder so marked to be lawfully imported into Porto Rico."

[3] Both the evidence of the witness and the court's conclusion therefrom were obviously incompetent and highly prejudicial. Of the same general import is a comment made by the court a little later:

"Then since 1921 no Coty's face powder, made and packed in France, is legally in Porto Rico, upon which the duty has been paid?"

To this question the witness Siegmund answered, "No."

It requires no discussion or citation of authorities to demonstrate error in such proceedings.

The judgment of the District Court is reversed, the verdict is set aside, and the case is remanded to that court, for further proceedings not inconsistent with this opinion.